SIGERSON, Appellant, v. HORNSBY & DENT, Respondents.*

1. Judgment reversed and the cause remanded for further proceedings.
2. *Quere*: what is the effect of the approval by the Secretary of the Interior, of Brown's survey of Carondelet common?

*Appeal from St. Louis Circuit Court.*

This was an action in the nature of an action of trespass. Plaintiff claims the land, upon which the alleged trespasses were committed, under the town of Carondelet, as being a portion of the common of that town, south of the River des Peres. Defendants claim title under a confirmation by the act of July 4th, 1836, to Sophie Bolaye, or her legal representatives; also by virtue of her having inhabited, cultivated and possessed the same prior to the 20th day of December, 1803.

*Whittelsey*, for appellant.

*Shepley* and *Hill*, for respondents.

SCOTT, Judge, delivered the opinion of the court.

The commons of Carondelet have long been a subject of litigation in our courts, and it is desirable, on many accounts, that this litigation should be terminated. There are, however, con-

---

* It is not conceived necessary by the REPORTER to set forth the evidence offered on the trial of this cause.

siderations operating on our minds which lead us to the belief that this case has not been presented in a way which will enable us to form a conclusion which will be final, so far as this court is concerned. After the trial of the cause in the court below, an event transpired which may have an influence in the adjustment of this controversy. The occurrence to which reference is made is the final approval of Rector's or Brown's survey, made by the Secretary of the Interior in February, 1855, since the trial of the cause in the court below.

If it should be thought that the position maintained in this cause by one of the parties, that, under the circumstances, there is no authority in any officer of the government to disturb this survey, might be made the point on which it should turn, it may be answered that there are difficulties in this view of the subject which have never yet been suggested in any argument in relation to the question, and which yet press themselves on our minds. The papers and documents in this cause show that the United States barracks, costing the government hundreds of thousands of dollars, are within the limits of the survey of Brown. These barracks, as appurtenant to them, claim upwards of 1700 acres of the land within that survey. The barracks were erected by appropriations of money, authorized by Congress, and a beginning of them was made prior to Brown's survey. Under these circumstances, was there any authority in any officer of the government to approve a survey the effect of which was to pass the title to lands which had been appropriated by Congress? Can it be said that the survey is approved, when 1700 acres of the tract are not lawfully within its boundaries? What would be the effect of an approval of a survey, by which a large portion of the tract surveyed was excepted from the survey? Could the courts regard such an act as an approval? Could the executive officers of the general government, by an act termed an approval, be permitted, in consideration of rights reserved to the United States, to sacrifice the rights of individuals? Are they the guardians of the rights of the government alone? Could they, at the expense

18—VOL. XXIII.

of individuals, make a conditional or qualified approval? would such an approval be respected? Should there have been a secret understanding between the officers of the government and Carondelet that an absolute approval of the survey would be made on condition that the town would afterwards convey to the government the barracks and their appurtenances, would the matter have been helped?

The officers of the general government, as well as the committee of the Senate, seem to us to be laboring under a misapprehension as to the effect of an approval of the survey of the Carondelet common. They seem to suppose that when an approval is made, it will be competent to the courts to ascertain and determine the rights of the respective parties within the survey. But in this, it would appear that the principle laid down in the case of Les Bois v. Bramell, (4 How. U. S. 449,) is overlooked. This case establishes the doctrine that an approved survey of the commons of a village, confirmed by the act of 13th June, 1812, is equivalent to a patent. Now the effect of a patent, not only on the rights of the United States, but of individual claimants, must be obvious. As to the individual claimants, the case to which reference has been made shows that an approved survey of commons, confirmed by the act of 1812, is a better title than a confirmation under the act of the 4th July, 1836. So the effect of an approval of the survey is a final adjudication against the individuals claiming adversely within its boundaries. What principle will prevent the United States from being placed in the same category with the individual claimants, is to be found out by those to whom the management of its concerns are entrusted. So long as the survey wants an approval, our courts hold that the commons are not protected from the claims of those relying on a confirmation under the act of the 4th of July, 1836. (Dent v. The Inhabitants of Carondelet, 18 Mo. 284.) Whatever has been confirmed to Carondelet must remain hers. But what has been confirmed, it seems, is a question to be ascertained by the general government or its agents, if it has not already been

done. Now, surely, it is competent to the government, with the assent of Carondelet, to settle this controversy on terms just to all those interested. If Carondelet will not come into terms, if she finds herself without a survey, she must take the consequences of her conduct.

As we are stating the difficulties which environ this controversy, although the consideration is not suggested by any thing contained in the record that we are aware of, yet we deem it not amiss to allude to it. We can not have shut our eyes to the different grounds on which Carondelet has presented herself in our courts since the litigation respecting her commons has arisen. In one case, she maintains that the survey of Brown is binding and conclusive on all parties ; in another, she questions the correctness or conclusiveness of that survey, and maintains that she is not concluded by it. There may be nothing in this. It has impressed itself on my mind, and if there is nothing in it, it may be explained away. The matter has never yet by the evidence in any case been brought to the knowledge of the court, so that it might be considered.

We wish it to be understood that there is no intention to express any opinion in relation to the questions to which allusion has been made. They arose in our reflections on the subject, and we deem that it would not be agreeable to the parties to have their rights determined in reference to them without first being heard. So, notwithstanding the delay, we judge it most advisable to remand the cause, in order that when it comes here again it may be finally determined.